Your Honor, this is the second case of the morning. The call is 209-1136. Uh, Roger Kowalski, Skelton, Eliason, and Pugin v. City of Sycamore and the Sycamore Community Union School District No. 427. On behalf of the adjourns, Mr. David A. Wright. On behalf of the City of Sycamore, Mr. Kevin E. Yook. On behalf of the School District, Ms. Nancy Rogers. I took his information, so he had to look again. I apologize.  May it please the court, counsel. My name is David Rolfe. I'm here on behalf of my partner, Todd Turner. Here on behalf of the plaintiffs, Mr. Roger Kowalski, the Skeltons, the Hootens, and the Eliasons. To challenge the City of Sycamore's ordinance which imposes a transfer tax on people moving into purchasing property in the city. More importantly, the exception created thereto. In addition, the intergovernmental agreement entered into between the city and the school district. The most important analysis on this appeal, we think, is the standard the court is to apply in reviewing the constitutional challenges that have been raised. It's the defendant's position essentially throughout their briefs that the standard is very deferential. A rational basis test essentially saying that once a reason is espoused, it is sufficient to pass constitutional muster. We believe that's simply not the case. We believe that under the privileges and immunity clause of Article 4, the strict scrutiny test under the equal protection as well as the uniformity clause, that there are higher levels. And the reason that's important is it requires, in order for the trial court to make the analysis, to see whether the higher levels are sustained, requires a factual development and hearing. And therefore, we think the dismissal of this case on 2-615 motion, prior to any opportunity for the plaintiffs to develop any factual inquiries and present any type of evidence, prevented the court from undertaking the appropriate analysis. And therefore, we ask the case be reversed and remanded to proceed at the trial court level. Determinations of this nature at this stage of the proceedings, is that unusual generally? Well, I think it is, Your Honor. And if you look at some of the cases cited, and particularly the uniformity clause cases in the briefs, none of those cases were decided on a motion to dismiss. All of them, there was some type of evidentiary record developed, either at an administrative review and hearing, or it's a motion for summary judgment. Indeed, if you look at cases under the privileges and immunity clauses, under the Article 4 rather than just the equal protection analysis, those two reading opinions demonstrate that there was a factual development that's required. The Hicklin case, when we're talking about the hiring preference, read the opinion, it was based on the affidavits, depositions, and memorandum that were before the court. Because the question is, what is the evil? In that case, they alleged it was high employment, high unemployment. And then the second part is the discrimination narrowed the table to address that, so they had to look and see, were non-residents the source of this evil? Without undertaking some factual analysis, the court could not have reached its conclusion, and that conclusion was that the evidence did not show that the non-residents were the source of the evil, the high unemployment. Do we have to plead that before we even get to that point? Well, we're required now in order to plead facts, and we plead facts. The facts are that this ordinance was passed. We plead facts that we believe perhaps the reason is the lack of funding in the school district, and we plead facts that that creates classifications which cannot be sustained. We need to have discoveries so that we can make inquiries with the city, with the school district, as to what they used. Let's assume, and we plead that perhaps the reason is the lack of funding in the school district. Is there a basis for that? We do cite a study which was admittedly done after this case was filed in 2007, I think, after the tax, that would demonstrate that there is not, in fact, an influx of non-residents coming into the city of Sycamore that are putting additional children in the school system. Those are the type of studies we need to do. If the school district can just espouse, if you move in, there's a greater burden. We've got to explore and see is that, in fact, true. Under the rational basis test, they may be able to say that's enough, that's in an inquiry, even if our reason is false, it's a reason that we have. We think we're entitled to explore that reason, and we don't have to explore that in order to plead a case, a cause of action, that allows us to get to the discovery and then present and develop those facts in front of the judge. Did you plead this study into each one of your counts or as to only one of the counts? And then that leads to another question based upon the answer. At a standard, I can't remember whether we incorporated all those counts into it or not. Well, let's assume it's one count because I think it is. I think that's correct. If it is this important to your case and to proving your case, why isn't it somehow interplayed across all of them, or are you telling us that we have to read the whole complaint and not each count individually? Well, I think you can read the complaint as a whole, but it very least would apply to that count, and I don't think it's required that we plead that study. We plead that as one basis and some factual support for it, but we're not required to plead evidence. We're required to plead facts, and I think the other counts are sufficient even if not referencing that study to sustain facts that the court then needs to go down the path of making the inquiry, whatever inquiry is needed under privileges and immunity clause, the inquiry that's needed under the equal protection clause. So our view would be that while we did cite that study in one of the counts, that's really an evidentiary matter, and under Illinois pleading laws you're required to plead facts but not evidence. We pled some evidence in one of the counts, but I don't think that that's fatal to our position that it's not in the other counts. But you have to plead more than your conclusions, correct? That is correct. I mean, count one, paragraph 47, lack of adequate school funding if needed, if there is a lack of adequate funding, is not caused by resident citizens of foreign states moving in. Is that a fact or is that a conclusion? Well, I think as a fact that we're going to have to develop evidence to support, and if we've given the opportunity to develop that evidence and present it, then that would be a good thing. Well, since this is an argument of cart before the horse, you have to plead facts in order to get past a 2-6-15, and I don't want to put words in your mouth, but I hear you saying, look, we have these bare-bone facts, and that someone else might consider a conclusion. You're saying that's a fact, and that's enough to get us past a motion to dismiss. That's correct. But the other side of the coin is that's the purpose of the 2-6-15. If you can't plead it, you don't get to phase two. Well, again, I think that's a fact that is pled, that there's not an influx of children coming into the city of Sycamore that are burdening the school district. And the moon is made of green cheese. What's that based on? In a 2-6-15, you accept the facts pleading as true. So if that is true, we've got to come forward with evidence. When we come to court under the Equal Protection Clause and the Uniformity Clause, and we're required to have the persuasion on the court that the taxing body's justification is not correct, our persuasion is met if we explain that the reason is not sufficient or the reason given is not supported by the facts. Facts are discovered and evidence are discovered through the discovery process. My clients were deprived of the opportunity to be able to gather that evidence and put it on. Did you do any aspiring preliminary discovery? No, and we had a motion to dismiss 6-1-5, so we did not ask for any preliminary discovery. Had there been a motion that was supported by affidavit, something like that, we would have taken the steps to move for discovery, saying it's premature, they're bringing forth evidence by way of affidavit, we need to have discovery in order to counter that affidavit. But in a 6-1-5 motion, they were merely arguing that as a matter of law, the complaint should be dismissed. We disagree with that. We think we've pled facts sufficient to allow the claim to go forward, and in order for the court to make the analysis that's required, really under any standard that's adopted here today, but in particular under the higher standards of scrutiny for each of these provisions, requires the plaintiffs an opportunity to develop facts sufficient so the court can act upon the appropriate inquiries. You've indicated that you believe it is the higher standard of strict scrutiny. What do you base that on? That the right to travel is a fundamental right, and as a fundamental right, then, the higher scrutiny is set forth in the Shapiro decision applies that requires a compelling state interest. That fundamental right arises, I think, out of the Soto Lopez case where the right to travel is implicated by any classification that serves to penalize the exercise of that right. It includes the right to enter and abide within a state municipality. So that's what gives rise to the compelling state interest as opposed to just the rational basis test. We think that the Sands case took that analysis further than to adopt the Shapiro standard for all those types of classifications. And that, I think, distinguishes the Ball decision where the analysis there was that unless there's a deprivation of a particular benefit, there's no penalty. And I think the Sands case went further some three years after Ball. The U.S. Supreme Court said that since the right to travel embases a citizen's right to be treated equally in a new state of residence, the discriminatory classification is itself a penalty. And since it is a penalty under the equal protection argument, a fundamental right is therefore affected and a higher level of scrutiny applies. Are you aware of the Sylvester case out of Massachusetts where the Massachusetts Supreme Court looked at Shapiro and Sands and still talked about the denial of benefits affecting critical needs, political rights, or important interests, and in that case found strict scrutiny did not apply, rational basis applied? Well, I think there is diversions between the various states, but I think that our view is that the Sands case fairly clearly supports that the Shapiro stricter scrutiny would apply. In particular, in commentaries, some of which we cited, is that in any type of durational residency requirement, the Shapiro analysis comes into play. And so I think the law has evolved with the Sands case from where it was in the 70s and 80s to where it is now and that it is a higher level of scrutiny, despite what the Massachusetts Supreme Court has said. Are there other state Supreme Courts that have discussed this that you're aware of that went the other way than Massachusetts? I'm not sure that there are. Again, I would be pointing to the U.S. Supreme Court case. I know that there are other cases that have held that the interstate right to travel is just as well a fundamental right as the interstate and have adopted the Shapiro argument and the higher scrutiny there. That would include the first, second, and third sort of appellate courts as well as a couple of the state courts. In fact, the Illinois decision in People v. J.W., which was a criminal case, stated that the right to interstate travel is a fundamental right as the right to interstate travel. And I think when you're dealing with a fundamental right, then the Illinois Supreme Court is postured to go down the path that it would be a higher level of scrutiny as set forth in Shapiro. The standard under privileges and immunities is different than equal protection, correct? That's correct. Is the second part of that more akin to rational basis where they talk about a reasonable relationship between the evil and the discrimination? The second part of the privileges and immunities, I think that's a higher standard because it requires it to be narrowly tailored to address the problem. I think that's different than a rational basis.  It may be broader and effectuate things and still be rational. So I think the second part of the privileges and immunities is a higher and more narrow view than the rational basis test. If we're even dealing with the rational basis test, I would submit that the courts have applied it with some teeth in it and not just a mere deference that if they espouse some reason, that's sufficient enough. The Supreme Court cases, the Hooper case that we cited, look beyond that and look and see whether or not there is a rational basis. That's one of the cases where they were purporting to reward established veterans and picked a date if you were a veteran resident. Prior to that date, you were entitled to the benefits, and the court when reviewing that said that the evidence, again, the evidence did not support the rational basis. So it's not clearly just a differential. Even the rational basis test is not so much that if the city can espouse a reason, that that reason is sufficient. The court can look behind that and the plaintiffs are entitled to develop evidence that there is no rational basis to support it. For instance, in this case, the Kalskys lived within the school district, paid property taxes to support the school district, sent the kids to private school, then moved into the city of secondary. Well, that's no additional burden on the school district because he was in the school district before, so still paying property taxes to support the school district, still sending kids to private school but was forced to pay this tax. That seems irrational. The evidence doesn't support it. Likewise, the application of the tax to non-homestead property, you're not bringing in any more students into the area to put additional burden on the school district. Now, again, that's assuming that the city were to come forward and say our rational basis for imposing this tax is because purchasers of property in the city create an additional burden on the school. I think that the law doesn't even pass the rational basis test based on those instances and classifications and the exception that is created. But, again, I think that it's important that the evidence be developed in order to address this situation. I know the timer has gone off, but let's talk about the ability of Sycamore and the school district to even do this if we get past the first questions. In that regard, our position is they don't have the ability and for reasons for each. The city, on its own rule, can only operate for its governmental purposes. One of the problems that arises is that the boundaries of the school district and city are not coterminous. So the city is collecting taxes from its citizens, giving them to the school district for the benefit of citizens who are outside, within the school district, but outside the city limits. In addition, there are other school districts whose boundaries come into the city of Sycamore who are not getting that tax. So I think that that creates an issue of constitutional authority for the Home Rule Unit to act beyond the use of its taxing authority and use its taxes to affect things that are beyond its governmental interest. The Deerfield Township case was different than that, though. Pardon? The Deerfield Township case, the library case, is held differently than that. Right. In addition, this new county sales tax, which the legislator recently passed, amended the revenue code to allow counties to collect taxes for the schools. It required, with that, an amendment to the school code to allow that funding because the state has encompassed the area of school funding entirely. So it speaks to that, that they've required an amendment to the school code to allow the counties to fund schools through the sales tax. But is there any such statutory construction in place that would require that here? I don't believe there is. I mean, the city could make a gift. Well, we disagree that the city can gift away its money to other entities. That's not a legitimate government purpose, and even under the Home Rule Authority. Well, they can't give it to me, but why can't they give it to another governing body as a gift? Well, one of the reasons we believe is essentially that would allow, Ms. Tyson, the school district, the other entities to accomplish things that they're not authorized to do just by circumventing it with an intergovernmental agreement. The Intergovernmental Cooperation Act is not an authorizing legislation. The parties to an intergovernmental agreement can only do under that agreement what they're entitled to do apart from that agreement. The school district in this case can't raise revenue by imposing transfer taxes. Therefore, it can't enter into merely under the guise of an intergovernmental cooperation agreement, but the city do that for it and raise taxes. The result from that would be that entities that don't have any authority or weren't able to effectively raise money because they couldn't get the referendum pass that they wanted to could merely enter into an agreement with someone else who had another taxing ability and gift them the money. So I think that the Attorney General's opinions are consistent in that regard that the Intergovernmental Cooperation Act is not authorizing legislation, and you've got to look at what both entities to that agreement are authorized to do. All right, Counselor, you'll have some time on rebuttal. Okay, thank you. Mr. Buick. May it please the Court, Your Honors. My name is Kevin Buick, and I'll be speaking on behalf of the city of Sycamore. Nancy Rogers will be speaking on behalf of Community School Unit 427, and I would like to, if it pleases the Court, confine my argument to approximately ten minutes with the remaining five to be allocated to Ms. Rogers. Toward that end, Your Honor, on behalf of the city of Sycamore, I would like to address first the level of scrutiny and the assertion that strict scrutiny or some form of heightened scrutiny is required here. I believe what Justice Buick alluded to with the Sylvester pain is strongly echoed by Illinois' First District Appellate Court in the Ball v. City of Streamwood case, where the Court very explicitly stated that the Supreme Court, excuse me, the United States Supreme Court, has found that a statute would penalize or impair the right of an individual to travel and thus invoke one of the fundamental rights only when vital government benefits are denied with the exercise of that right. In fact, Ball v. City of Streamwood and Stahl v. Village of Hoffman Estates both speak to this very situation where a municipal transfer tax is invoked. And the issue here is not the type of issue where strict scrutiny traditionally lands in terms of the denial of, let's say, welfare benefits or the right to employment. And some of the Supreme Court opinions that are contained in Plaintiff's Brief where you really do need to have that level of scrutiny because it is impacting a fundamental right here. The transfer tax, and more specifically the exemption to the transfer tax, doesn't penalize or it doesn't invoke a vital government benefit, and none has been identified by the plaintiffs in this case. Do you believe the right to travel has been properly pled and is at issue here? I believe that the right to travel is... I believe, Your Honor, that it's a bit of an overstatement to attempt to invoke the right to travel and privileges and immunities in a situation where what is being attacked and what is issued is simply an exemption from transfer tax in a taxing case. Here, the situation, because of the lack of an identified government benefit, the right to travel doesn't belong in this case. That having been said, I think that squarely, whether it's Article IV or 14th Amendment types of invocation of privileges and immunities and equal protection elements, all land on the side of rational basis review and rational basis analysis. And as the Court is aware, that's a very deferential standard. Even in the Ball case, in analyzing it, the Ball court, the first district court, had a little bit of a question about the rational reasons that were cited by the village in asserting their exemption. They called them curious. That said, they went through the analysis, and they said any legitimate governmental reason that can be posited in this situation is appropriate for deference, and the exemption survives. Counsel argued that part of the test under privileges and immunities was that this law must be narrowly tailored. Do you agree with that? In a situation where strict scrutiny would be appropriate because a fundamental right was being deprived, then that language that can be narrowly tailored... I agree with that. I mean, there's strict scrutiny under equal protection, but, I mean, sometimes these things kind of meld together, and I'm trying to see whether they're separate or whether they are supposed to meld together. I mean, the narrow tailoring, I'm certainly aware of that, is part of the second test on equal protection. You know, is that also part of the test for privileges and immunities? Not in a situation where a vital government benefit has not been invoked or denied. In a situation where we're dealing with a classification such as that issued here, the only requirement is that some basis, some rational basis, can be posited for the basis of the classification. So there is no need, and I would submit that in our situation, Your Honor, we would believe that we have a compelling interest and that the exemption is narrowly tailored to meet that goal. But in this situation, that's not the level of review, and we don't believe that that is part of what the court should be considering in analyzing whether this classification is vulnerable to the type of attack that the plaintiffs have made. With respect to that, I think that the court does need to hear and should be able to discern what the rational basis that the city has set forth in establishing the nature of the exemption and the type of exemption that's issued. And that is pled in the plaintiff's complaint. The plaintiff's complaint specifically identifies all of the reasons that are before the court in trying to do this analysis. And that's why I would respectfully disagree with Mr. Rolf's analysis and argument to the effect that we have to get into some factual discovery here because the reality is it's all in the plaintiff's complaint. All of those allegations in the complaint are to be deemed in a light most favorable to the plaintiff. The trial court did that. And in evaluating and reviewing it, the trial court determined and identified that, for example, the burden on the school district and the lack of adequate funding is the evil to be remedied. There isn't a need for discovery of that. It's in the plaintiff's complaint. The basis for the exemption, the fact that residents of Sycamore, who have lived in the city for at least a year, who have been paying property taxes that ostensibly, at least at some level, do fund the schools, are a legitimate body of individuals who would qualify rationally for that type of exemption from transfer tax. The newcomers ostensibly to the school district are part of the harm that is to be remedied. And in that situation, there is a rational basis for the city to establish an exemption from transfer tax that acknowledges that those individuals who have resided within the city for at least a year, whether as owners of property or as renters who are paying rent that would ultimately fund property taxes, have that tie to being excused, if that's the right phraseology, from paying the transfer tax. Whereas the people such as the plaintiffs who are coming and entering the district, at least plausibly, may be the types of people that would contribute to the burden on the Sycamore School District. What about the plaintiff who's already in the school district? Indeed. And that is one of the things that the plaintiff is a perfect plaintiff. The plaintiff is one of the rare individuals who falls just outside the boundaries of the city and therefore inherently can't be part of the exemption and has been attending the Sycamore schools. But the laws, Your Honor, I believe are very clear that when the city, when the legislative body is fashioning a classification such as a tax classification, the fit doesn't have to be perfect and often isn't. The fit simply has to be rational and logical. How is that rational or logical as applied to that plaintiff? It's because the exemption targets, the exemption benefits the class of people who cannot do harm. There may be people like plaintiffs. Indeed, there are. And again, I'm speaking of Plaintiff Ravitkowsky in this situation, not the out-of-state or out-of-city plaintiffs. But in that situation, the mere existence of an anomaly outside of the fit doesn't render the classification itself illogical, arbitrary, or capricious, which is what's necessary in order to declare that the exemption somehow offends the Constitution of the United States or the Constitution of the State of Illinois. In this situation, the fact that the exemption is based on those people that cannot do harm to the school district because they've been paying the transfer tax doesn't necessarily render the entire, the imperfection that allows the existence of Plaintiff Ravitkowsky. How imperfect can it be before it does begin to offend the Constitution? I'm sorry, Your Honor? How imperfect must it be before it begins to offend it? At what point? Very. Where's the tipping point? Very. The tipping point is when the classification itself becomes arbitrary and irrational. And in this situation, the existence of an anomalous individual or small group of individuals doesn't render the classification itself irrational. One of the things that Mr. Roth alluded to is the fact that the boundaries aren't precisely coterminous. However, if you examine the boundaries of the city of Sycamore and the boundaries of the Sycamore School District, you're going to note there's only a very, very slight departure and deviation on either side. The city of DeKalb, the DeKalb School District comes into the city in a very small portion. The, you know, the Sycamore School District boundaries do go outside. But I would allude to the fact that the Deerfield Township case that Justice Burke referenced, I think there again makes it clear that in that situation, the fact that some of the people in the township were able to use or deprived from the use of the city library doesn't render it, the mere fact that some access existed was enough. And it makes the point that these boundaries don't and can't be perfect. And the mere fact that they're not perfect doesn't render them arbitrary and capricious and violent of privilege and equal protection uniformly or any of those types of things. So you're saying it's not necessarily the number of people who are who have to pay this particular. We have clocks around, but some of them don't work. So it's not that they have to pay this, but the boundaries are such that this was reasonable for the village to do. And it's more in my understanding, Justice Hutchinson, the nature of the exemption itself and the fact that the exemption itself targets a group of individuals that could not do harm. It doesn't mean that it's everyone. But that group of individuals, you know, had all, those that are entitled to the exemption, all had been paying taxes to the Sycamore School District. The fact that the reach isn't exactly a perfect reach doesn't render the law unconstitutional or inappropriate in any way. Are there any bright line percentages that you've found in cases? Because I know you've cited some percentages, and they happen to be in your favor. I understand. But are there others out there that aren't? None that I'm aware of in the sense that the deference and the level of deference to legislatures passing these types of laws and imposing these types of taxes and these types of exemptions and taxes are so deferential that it's extremely difficult to try to quantify that. Because as the, I mean, it's almost a United States Supreme Court, you know it when you see it type of analysis. In this situation, what has to be looked at is whether the classification is arbitrary, whether the classification is absolutely unreasonable. And there's no basis in this situation to come to that conclusion. Thank you. Ms. Rogers? Thank you, Mr. Court. I'm Nancy Rogers for the School District Defendant. I imagine I only have a few moments left, so I will be brief. But what I'd like to follow up on is the question that was asked as, assuming that this passed constitutional muster in terms of the ordinance, can the school district in the city even do this? And the answer to that is very straightforward. We have both in the Illinois Constitution and in the Illinois statutes intergovernmental cooperation. Clause in the Constitution, the Intergovernmental Cooperation Act under Illinois statute that not only provides for local government entities, including school districts specifically, and municipalities, to share revenue, to share power, to share resources, and to combine, to share services. But actually encourages that in terms of promoting effective government. So there is far from being a prohibition to this kind of sharing of power, revenue, and so on. It's explicitly provided for in the Constitution and the statute and the school code. We have many examples of that. We see them every day. They don't need specific provisions that would permit, for example, a school district or a library or a park district to receive funds. For example, impact fees are a great example of that. The school district isn't entitled to pass an impact fee. They can't do it. Cities, whole world cities, can pass an impact fee. They pass one. They collect revenue. They then distribute it to a school district, a park district, a library. It's a revenue sharing and transferring function. It's explicitly permitted. Impact fees are one example. There's other kinds of revenue sharing. So those are some of the examples. Then, furthermore, there's the issue of whether or not, through this intergovernmental agreement that the parties entered into, did the school district or the city contract away some obligation of duty that they were required to have. The appellants have argued that the school district wasn't permitted to do this because they somehow circumvented the school code and contracted away something they were responsible for, for example, their own financing. The Intergovernmental Cooperation Act and the Constitution provides for this kind of sharing so long as it's not otherwise explicitly prohibited by law. And the appellants do have in their brief a number of examples where there was an intergovernmental agreement that was found to be invalid. The reason in each of those cases was because there was some specific provision elsewhere in the law that was being violated. An example of that will be, in fact, they have several attorney general opinions. While they may be persuasive, they aren't binding. Nonetheless, they have a series of examples that bring this forth. There's one where the attorney general opined that an intergovernmental agreement between a township and a county that was to provide for the common contracting for refuse and garbage disposal was impermissible because the township under the township code is expressly prohibited from contracting for private refuse services without a referendum. Another example is a 2005 attorney general opinion. It had to do with an airport commission where there were a number of home rule and non-home rule communities that were bound together in this commission. There were going to be no big contracts left by this commission. Some of the non-home rules, of course, are specifically prohibited under the Procurement Act from participating in no big contracts. There's a whole series of them. I don't have time to go through them all. It'll go off soon. Oh, I'm sorry. You're fine. It didn't or it did? It's still going soon. Okay. So there are examples that are inapposite that are in the briefs from the Avalon. The bottom line is there's not only no prohibition on this kind of arrangement, it's encouraged, and there's nothing in the intergovernmental agreement that is prohibited by law. The school district isn't giving away any of its duties. It's actually getting revenue sharing from the city, and then under its own authority of the school code, it uses those for its own operations. It's subject to all of its same parameters and restrictions under the school code for how it does its budget, what it's entitled to use money for under its operations. None of that has changed. Nothing's been contracted away by the school district. Is there a specific statutory prohibition in that Belleville attorney general's opinion? That's a good case. The attorney general in 1978 opinion, and that actually dealt with a retail sales tax, retailer sales tax where the municipality was collecting a retail, merchant's retail occupational sales tax, and then decided that it would transfer via revenue sharing that money to businesses in the unincorporated county. In that case, the attorney general found that there was nothing that pertained to the city's authority and government because, in fact, all of the money that was being collected was, by definition, given to an entity that had nothing to do with the city businesses that only functioned in the unincorporated county as opposed to the city. So that was a case where an attorney general actually looked at it and found it doesn't pertain to the city's authority and government. If there was no specific prohibition in that case, they just found there wasn't. The attorney general found that there wasn't an excess. What about the fact that we have another school district here, and they somehow are sick and more isn't worried about this other school district? Is this a problem? I mean, there's another school district that comes into sick and more or somehow. Oh, the boundary's not being completely determined. Right. It's not being a perfect fit. Right. Right. Well, the whole issue with the city under its home rule authority being able to tax is it can tax this so long as it's related to its government authority and government responsibilities. And it's really pretty common sense that when you have a school district, even though it might have a small part of the city that's covered by a different school district, it's pretty common sense that a quality education for the major part of the city or the bulk of the city or almost all of the city, even though there are some imperfections, certainly would relate to the general welfare and prosperity of the city, not only to the education of its own citizens, also the ability to attract business and so on. And the Deerfield case spoke to that. It talked about the imperfection between the township library and the city who was getting money from the township. Even, I'm sorry, the city library and the township that was donating money. Not all of the township residents benefited, but the language that the court used was generally it contributed to the prosperity and the welfare of the township to have the library there and have some of its residents be able to use it. So it was not even, it certainly wasn't a percent test. They didn't talk about how exact it had to be. It wasn't clear how many of the township residents wouldn't benefit, but that was the standard.  In your practice, have you come across any bright lines, bright line applications by states or other Supreme Courts? No, and I think the reason for that is if the rational basis test, generally you don't get to a bright black and white line. The courts will look and see if there, either if there was an expressed rational basis for it, which in this case there was on the face of the complaint, and it's pretty obvious on the actual language of the ordinance and the intergovernmental agreement. But we know that it just has to be some basis that could be conjured up that would potentially be rational. So I haven't seen a bright line. This is certainly far beyond being able to conjure up some rational basis for, you know, the tax and the transfer of some revenue to the school district. It's even clearer on the face of the complaint, as counsel said. Can a court do this without actually taking evidence on the issue, which is one of the issues that we're faced with in this case? Sure. I mean, this is purely, on the 2615, we believe this is purely a legal question. There aren't any additional facts to be developed that will implicate one way or the other whether this can be decided or illegal. We know what the law is. We know what's happened here. We have a copy of the intergovernmental agreement. We have a copy of the transfer tax. We know what the Constitution, the Illinois Code says about the ability of these government units to do this. We know that there are some plaintiffs that moved in and didn't have to pay the tax. We know that everyone else who was in the city and hasn't lived there for a year will have to pay it. There's no additional individual fact that will implicate whether or not this can be decided to be constitutional or not. It's strictly a legal question. Your position is it's a strictly legal question if it's a rational basis inquiry? We believe it's a rational basis test, but— Let's assume for the sake of argument that we determine that it's a strict scrutiny. Are there additional facts that would be necessary? We believe that even in a strict scrutiny situation, we have, on the face of the complaint and on the facts that are there, the attachments to the complaint, the intergovernmental agreement, we can see clearly what the intent was. It was expressed. There's a close fit between an intent of the city for supporting its local public school system to educate its constituents. There's a very close fit between taxing people who will bring students potentially into the district that aren't there now. That should be enough to survive strict scrutiny. I don't believe any further fact development will change that analysis. All right. Thank you. Thank you. Thank you. All right. Mr. Roth? Thank you. I'll touch briefly on this issue of the need to develop facts because, again, I think under any basis we need to develop facts. Counsel just said we know that there's a close fit here, we know that there's a close fit here, we know that there's a close fit here. We don't know that there's a close fit here. You talked about whether there's a bright line test. What is arbitrary and capricious? What is the percentage? Is there a magical percentage? Plaintiffs were deprived of the opportunity to explore and present to the court what that percentage might be. So I think even if there's not a bright line test and the court is looking at whether it's arbitrary or there's rational basis, and certainly with the higher standard of scrutiny, plaintiffs are entitled to an opportunity to develop the record, present that to the court so that the court can make its analysis, whether it's to see whether it met a certain percentage or not or how close the fit is, which counsel is purporting to say is clear and already in the record. Other than this case, and you cited many in your brief, are there any other cases that stand out as being done only on the complaint? You mentioned summary judgment because there would be other facts that could be developed by deposition, by affidavit. Anything just by complaint? I don't think on the privileges and immunities cases that there were any that were just on a motion to dismiss. I know in reviewing the briefs, the uniformity clause or none of those are on the motion to dismiss. As I stand here, I think that there may have been some of the equal protection cases cited in the defendant's brief that were on a motion to dismiss, but I know in the other two areas it was not. And I think, again, the Sands case, this idea of the rational basis test versus higher scrutiny has evolved since the Ball decision. The Ball decision cites Memorial Hospital. I think it misconstrues Memorial Hospital, and I think the Sands decision makes it clear that there is a penalty. Just the fact that there's a classification creates a penalty invoking a fundamental right and rises the level of scrutiny. Justice Berkworth, regarding the library district case, you mentioned that. One thing I would note in looking at it, that was an issue. They were exploring what the corporate purpose was. Our position is that it's the school district use of city funds for school district beyond the corporate purpose. Very clearly the case says what constitutes a local corporate purpose must be determined from the facts and circumstances of each particular case. Again, lending itself to the idea that you can't really come in and say use of city funds for the school district is within our corporate purpose. Let's explore that. It depends on the facts and circumstances of the case. The plaintiffs are entitled to develop that argument in order for the trial court to be able to look at that and see if the facts and circumstances in this case meet that threshold. With regard to the final argument and the question, again, I think Justice Berkworth raises, is there a specific prohibition? I think it was referring maybe to the Deerfield case. The answer was that there was not a specific prohibition. You're looking at what the authorization, and this is consistent with the Attorney General's opinion, and Dillon's rule, that the Intergovernmental Cooperation Act is not authorizing legislation. The authority comes from the municipality using its resources for its corporate purposes. And so the analysis there, as counsel said, was not whether there was a specific prohibition that they not be able to use their money for the school district. The question is whether use of that money for the school district was within their corporate purpose. So I think, again, there, that lends itself to the idea that this is not something that should have been dismissed out of hand, that we need to look and explore these issues more thoroughly. And the plaintiffs are entitled to present, develop an evidentiary record, present it to the court so that the appropriate inquiries can be made by the court, even under a rational basis analysis. In fact, Counsel Buick argued that, or he answered that he thought maybe the right to travel was a bit of an overbroad statement, and that there was nothing here by this transfer tax that prohibited people from traveling, prevented them from receiving some benefit. Do you want to address that? Sure. I think that's directly addressed in the Sands case, is that the fact that there's a classification, it doesn't require then, is it a penalty. It doesn't require a deprivation of a certain benefit. The truth is, these folks coming in are taxed. That's a penalty. They're treated differently than other residents of the city of Sycamore, based merely on the time in which they became a resident of the city of Sycamore. That's what the Sand looks at in the Soto case and the others, is if that's the case, then there's potential to have a deterrent effect. The deterrent effect is all that's required under the Memorial Hospital decision. And so I think that it is a fundamental right to travel that's being interfered with. There's a penalty on these people, because they're treated differently than other residents of the city of Sycamore, based on nothing other than when, in particular continuum of time, they became a city of Sycamore. If you're going to allow cities to charge an entry fee for everything, it could go down a slippery slope of, well, you haven't been here before, and now you're using our roads, so we're going to charge you an entry fee. If you're out of the city and come in, we're going to pass a transfer tax that says you move in. I think we're going to exempt the others, because now you're using our roads and you hadn't before. Water. So basically you're going to be able – it opens the door, if you want to look at a slippery slope, to charging entry fees. And that creates a situation where you're kind of fencing people out, which I think is what clearly the right to travel has said in this nation, whether it's the 14th Amendment, Article 4, or whatever, is so encompassed in our nation, in the federal states, that you do have a right to travel, and we can't fence out. You want to put it into an analogy back in the ag days that cows being fenced in or fenced out? They're fencing out. Thank you. Council, thank you very much for returning to constitutional law. It's a frightening thought sometimes when you've been out as long as I have. But thank you very much for the very enlightening arguments. We will take this matter under advisement, and we will make a decision in due course.